### RUCKER v. MOST WORSHIPFUL ST. JOHN'S GRAND LODGE, ANCIENT, FREE AND ACCEPTED MASONS OF LOUISIANA. *

#### No. 4296.

Court of Appeal of Louisiana. Second Circuit.

June 15, 1932.

Sol. B. Pressburg and Isaac Wahlder, both of Alexandria, for appellant.

Herndon & Herndon and Charles M. Roberson, both of Shreveport, for appellee.

PALMER, J.

Asa Rucker, the deceased husband of plaintiff, was, at the time of his death, a member of Pride of Alexandria Lodge, No. 196, A. F. & A. M., a colored organization, located at Alexandria, La. This organization is a subordinate order of the Most Worshipful St. John's Grand Lodge, A. F. & A. M., of the state of Louisiana, also a colored organization. Asa Rucker's membership in the local order entitled him to insurance in the Grand Lodge, upon payment of certain dues. Under the insurance certificate, or policy issued to him, his wife was designated beneficiary, and, upon his death, she was entitled to receive the sum of $500, as insurance, and an additional $75, to cover burial expenses.

Plaintiff alleges her husband died on May 22, 1930, while a member in good standing in the local order, and that she had made due and proper proof of his death and had surrendered the said certificate, or policy of insurance; and that defendant had refused to pay the said indebtedness. She further alleges that all assessments due by her deceased husband on his insurance benefits in the said order had been properly paid.

Defendant denies that plaintiff's deceased husband was a member of the order in good standing at the time of his death, and therefore denies any indebtedness to plaintiff under the alleged certificate or policy of insurance.

Defendant specially pleads that the certificate or policy of insurance issued to deceased lapsed and became void long prior to his death, by virtue of his failure to pay the dues or assessments necessary in order to keep the said certificate or policy of insurance in effect.

Upon these issues, the case went to trial and resulted in a judgment for defendant, rejecting the demands of plaintiff, from which judgment plaintiff prosecutes this appeal.

Upon the trial it was admitted that all amounts due by plaintiff's deceased husband for dues on the certificate or policy of insurance had been properly paid up to and including the month of March, 1930, and that he departed this life on May 22, 1930.

The worshipful master of the local lodge testified in effect that the deceased had been sick for a long time, and that the order had a sick benefit fund out of which the dues of sick members, and, in this particular case, the dues of deceased, were paid; that for the months of February, March, April, and May, during the absence from the meetings of the secretary, in open lodge, he credited the passbook of the deceased with the payments for those months. In other words, the dues of the deceased were paid by the local lodge, of which the witness was the chief officer, and, as the chief officer of that lodge, he credited the passbook of the deceased with the payment of his dues for the months of February, March, April, and May.

The secretary admits that the credits made by the worshipful master for the months of February and ·March were properly made by him in his, the secretary's, absence, and that, in remitting to the Grand Lodge, defendant in this case, the dues of the deceased were included. The plaintiff testified that the lodge had kept her husband's dues paid since he was taken ill, about a year before his death, and that the secretary had told her to make no personal effort to pay the dues, as the lodge would always pay them.

While there is some conflict in the testimony on that point, yet the evidence convinces us that the local lodge had ·paid for the deceased his monthly dues for practically a year; that is, the local lodge, during the illness of the deceased, which lasted about a year, appears to have donated to him his dues and would credit his passbook, as though he had paid the dues in cash. Sometimes as much as two months would pass before the lodge would actually credit the passbook with the payments. In March, the worshipful master, in the absence of the secretary, credited the book with the payments of dues for February and March, and in May, just before Asa Rucker died, he again, in the absence of the secretary, credited the passbook for April and May dues. The local lodge, in remitting to the Grand Lodge, to cover amounts due by the members, would include the dues of the deceased. This procedure was followed up to and including May of 1930, except the secretary, in remitting to the Grand Lodge for the dues of April and May, did not include the dues of the deceased, although, as we have stated, the passbook of the deceased was credited with the April and May dues by the worshipful master of the local lodge, in open meeting, just as had been done before the deceased departed this life.

There is some conflict in the testimony as to whether the local lodge had a regular sick benefit fund, separate and distinct from its other funds, out of which the dues of the sick members are paid, but we deem that question immaterial in this case, just so the local lodge accepted the responsibility of paying, on behalf of the deceased, his dues. It seems certain they did this up to and including the month of March, for there is no dispute up to that point. Also there is no dispute but that the worshipful master, in apparently following the same course that had been followed for months, and especially following the same course he pursued for February and March—the authority for which action the local lodge did not question—credited the passbook of the deceased with the dues for the months of April and May.

■ We are of the opinion that, when those dues for April and May were credited on the passbook of the deceased, if not pursuant to an obligation due deceased, at least pursuant to a custom they had established in his case leading him to believe his dues were being taken care of, whether actually paid in cash or not, the local lodge became bound to the Grand Lodge for those dues, and the mere fact that they failed to remit covering the dues of the deceased for April and May, under the circumstances stated, does not lapse the policy. It is not disputed that, if the deceased had actually paid his dues for the months of April and May, he would have fully complied with his obligations, and that his policy would have been kept alive, notwithstanding the local lodge may have, through oversight or otherwise, neglected to remit those dues to the Grand Lodge.

The constitution of the order, relative to the insurance phase, requires the association to collect 85 cents per month from each member and remit it to the Grand Lodge. In other words, the duty of collecting the assessments is placed upon the local order, and consequently a member complies fully with his obligations when the local order receives the collection, or receipts the member for the dues. Any failure on the part of the local order to remit to the Grand Lodge is no fault of the member. In this case, it is certain that the chief officer of the local lodge, before the deceased died, credited him in his passbook with the dues for the months of April and May. As stated before, whether the deceased paid the dues in cash or whether it was a gift from the lodge is, as we view it,. immaterial. The record shows that the dues were paid, and therefore, if the local lodge failed in its obligation to remit those dues to the Grand Lodge, such failure cannot operate as a forfeiture of the certificate or policy of insurance held by the deceased.

■ Any testimony by any member of the local lodge that deceased was in bad standing when he died, for want of payment of his dues, is in direct opposition to the manner in which the local lodge acted when and after he died. It will be noticed that the local order gave him a funeral under its auspices. Under the provisions of their constitution and by-laws, a deceased member in bad standing at his death would not have received such consideration. Again, as further evidence that the local lodge considered the deceased was in good standing at his death, in the month of June following his death on the 22d of May, it paid a burial charge of $8. Such facts clearly negative the idea that the local lodge considered the deceased otherwise than in good standing. If in good standing, they doubtless considered his dues all paid at his death.

■ It can hardly be questioned that the payment of dues by a member to the local lodge preserved his policy of insurance, even though those dues are never remitted by the . local lodge to the Grand Lodge. It is the local lodge that makes the collections and re-

mits to the Grand Lodge. A member cannot remit direct to the Grand Lodge to cover his dues. The local lodge is nothing less than the agent of the Grand Lodge in the collection of dues; hence a payment of dues by a member to the agent is equivalent to a payment to the principal. This court held to quite the same views in the case of Tillie Edwards v. Grand United Order of Wise Sons, etc., 6 La. App. 693. Furthermore, the law of agency on this question is too plain to admit of any argument.

In our view of the case, plaintiff is entitled to recover the amount sued for. The judgment of the lower court is therefore reversed, and it is now ordered, adjudged, and decreed that plaintiff have and recover judgment of defendant in the sum of $575, with 5 per cent. per annum interest from May 22, 1930, until paid; together with all costs of both courts.