## DAVIS v. DISTRICT GRAND LODGE NO. 21, GRAND UNITED ORDER OF ODD FELLOWS, JURISDICTION OF LOUISIANA. *

No. 1242.

Court of Appeal of Louisiana. First Circuit.

Dec. 4, 1933.

F. B. Smith, of New Orleans, for appellant.

Chas. J. Mundy, of New Orleans, for appellee.

LE BLANC, Judge.

Carrie Davis was named as beneficiary under a policy issued to B. J. Davis, by the bureau of endowment of District Grand Lodge No. 21, Grand United Order of Odd Fellows of Louisiana, on March 26, 1902. She was married to B. J. Davis, whose full name was Benjamin J. Davis, and is designated as his wife in the policy. Davis died at his domicile in the city of New Orleans, October 25, 1931. The policy was a graded one, but the insured had lived the full time required under its terms to make the maximum amount to be paid thereunder, that is, the sum of $500, exigible in case of liability.

The bureau of endowment of District Grand

Lodge No. 21 is a fraternal benefit association which insures its members through local or subordinate lodges. All dues are paid to and collected by the local lodge with which the individual member affiliates, and the lodge in turn makes remittances for the members to the parent body.

The deceased member in this case belonged to Pride of Louisiana Lodge No. 1529 of the City of New Orleans, of which one L. H. Downs was the secretary charged with the collection of dues and making proper remittances to the Grand Lodge.

In due time after the death of her husband, Carrie Davis submitted proof thereof and surrendered the policy he carried, to Downs, secretary of the local lodge, and upon failure of the endowment bureau of the Grand Lodge to have made payment within the time fixed under the policy, she instituted this suit to recover the proceeds thereof. In addition thereto, she alleges in her petition that the policy provided for the payment within a short time after the member's death of a burial benefit in the sum of $65, and that as she has never been paid that amount, she is entitled to recover it with the proceeds of the policy. She therefore prays for judgment against the defendant in the full sum of $565.

The defense urged by the endowment bureau of the Grand Lodge is that the local lodge of which the decedent was a member had been suspended for nonpayment of endowment dues and other lawful obligations due the parent body, no dues having been paid either by the lodge itself or the deceased member since the month of May, 1931, notwithstanding the fact that due notice of such nonpayment had been given to the proper officers of the said local lodge in accordance with the rules of the defendant organization. It is especially averred that knowledge of suspension of their lodge is shown by a letter addressed by its officers and members to the Grand Lodge on October 14, 1931, which letter it is further alleged will be produced on the trial of the case.

The lower court rendered judgment in favor of the plaintiff for the full amount demanded by her, and the defendant has appealed. Plaintiff has answered the appeal asking for damages in the sum of 10 per cent. of the amount of the judgment for a frivolous appeal.

■ The defense that the suspension of a local subordinate lodge by the parent lodge of an organization such as this defendant is has the effect of annulling certificates or policies of insurance issued to the member of the local lodge has been so frequently rejected of late that we are given to wonder why such organizations persist in urging it before our appellate courts. This very defendant unsuccessfully pleaded it against a policy issued to

another member of the very same local lodge with which we are concerned in this case. See Johnson v. District Grand Lodge No. 21, decided by the Orleans Parish Court of Appeal on June 29, 1933, and reported in 149 So. pages 145, 146. In that case the court said: "The fact that the local lodge had been suspended by the Grand Lodge would not deprive the individual members of the local lodge, who were in good standing, of their rights to their insurance protection. It has often been held that the officer of the local lodge, who has been designated by the Grand Lodge as the person to whom the members of the local lodge shall pay their dues, is the agent of the Grand Lodge, and that therefore payment to him constitutes payment to the Grand Lodge, whether the funds are actually transmitted to the Grand Lodge or not."

The court then refers specifically to two decisions, namely, Emanuel v. Central Grand Independent Order, etc., 16 La. App. 186, 133 So. 506, and Wilmer v. Most Worshipful St. John's Grand Lodge (La. App.) 142 So. 858, and adds: "There are many other authorities to the same effect."

■ But, in this case defendant urges further that not only was the local lodge to which the decedent belonged suspended, but the officers and members had knowledge of the suspension. In such case, it is contended, the rules of the organization provide a method by which the member who cares to protect his insurance may do so, and the decedent herein having failed to avail himself of that provision, his policy ipso facto lapsed and the beneficiary thereunder cannot collect the insurance. This same point was also made in the Johnson Case and was also decided adversely to the defendant's contention, and we thoroughly agree with the ruling of the court therein. Notice of suspension to the officers and certain members of the local lodge does not constitute notice to all of the members, and unless it can be shown that knowledge was brought directly to the individual member concerned, he has the right to rely on the agency which the law establishes between the Grand Lodge and himself through the officer of his local lodge charged with the collection of his dues, and as long as he pays them to that officer he is protected in his rights under his policy. The letter of October 14, 1931, which defendant declared on in its answer as showing knowledge of suspension to the local lodge involved in this case on the part of the officers and members thereof, was produced on the trial of the case, and whilst it does contain proof that the officers and some members knew that the lodge was behind in the payments due the endowment bureau, there is nothing that in any manner connects or implicates the decedent, B. J. Davis, as his name nowhere appears nor is it in any way mentioned therein. De-

fendant introduced in evidence a letter written for the plaintiff by some one else to the principal officer of the endowment bureau on September 14, 1932, the purpose of which also was to show that her husband had knowledge of the suspension of his lodge. We are unable to construe the letter as containing any such admission however, and really cannot understand how it could be used as proof to that effect. Other than what we have referred to, there is nothing in the record that bears on the question of the knowledge B. J. Davis may have had that his local lodge had been suspended, and we now come to what appears to be the vital issue as to whether his dues to his local lodge had been paid regularly up to the time of his death.

■ Counsel for plaintiff introduced in evidence the official financial book issued by. Pride of Louisiana Lodge .No. 1529 to B. J. Davis in which was kept the account of the payment of his dues, and that record establishes the fact that the last payment made by him was in September, 1931, the month before he died. Counsel for defendant objected to the offer on the. ground that the entries therein made were not made by the secretary of the lodge and were not signed or approved by him, and if they were, his signature thereto has not been identified. We have examined this official financial book carefully and observe that out of nine entries made therein only two are attested by the secretary, who, instead of signing his name in full, merely initialed the entries. Of the five entries therein made before the lodge stopped making remittances and at a time when there was no question as to Davis' payments, there are three that are not attested by the secretary, and yet in the last remittance made by him to the endowment bureau in May, 1931, the name of B. J. Davis is carried on his list of active members. The secretary seems to have been very irregular in attesting the monthly payments before as well as after the lodge was suspended, and we are not prepared to hold that the book was not properly admitted in evidence. We think that it establishes prima facie proof of the payment of the dues by this deceased member to his local lodge and defendant has offered nothing to rebut that proof. Besides, there is the positive testimony of the plaintiff to the effect that during her husband's illness she provided the money and saw to it that his dues were paid. We are satisfied that the district judge correctly resolved the testimony on this point in favor of the plaintiff and held her late husband to be a member in good standing with his local lodge, as indeed he had to be in order for his beneficiary to recover on his policy.

With regard to the demand for the burial benefit of $65, we note that plaintiff's allegation is that it was provided for in the policy and this allegation is denied by the defendant. We have read the policy over and do not find where it contains any stipulation regarding such benefit. Plaintiff has offered no other proof in support of her claim thereto, and we are at a loss to understand on what ground the judgment of the district court which included that amount was based. We are of the opinion that that part of plaintiff's demand should have been rejected, and therefore the judgment will necessarily have to be amended.

■ For the reasons herein stated, it is therefore ordered that the judgment appealed from be and the same is hereby amended by reducing the amount therein awarded from the sum of $565 to the sum of $500, and as thus amended that it be affirmed. The demand herein made by plaintiff for damages for frivolous appeal is rejected.