### CENTANNI v. SOUTHERN LIFE & HEALTH INS. CO.
### No. 16241.

Court of Appeal of Louisiana. Orleans.
Jan. 27, 1936.

Clarence Dowling, of New Orleans, for appellant.

Solomon S. Goldman, of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by a beneficiary of an Industrial Life Insurance Policy claiming $500 as the face value of the policy and $10.80 as unearned premiums. There was judgment below in favor of the defendant, and plaintiff has appealed.

The suit is defended upon one ground only, and that is that the policy, at the time of the death of the insured on August 10, 1934, had lapsed because of nonpayment of the premium.

■■ The policy sued on was issued to Walter Brown, a negro employee of Peter Centanni, the beneficiary, plaintiff herein, in October, 1933, and called for the payment of a weekly premium of 60 cents. Centanni paid the premiums from week to week for a number of months and contends that in September, 1934, he paid to Wilmert J. Laurent, an agent of the defendant company, a year's premium in advance, about $31 in cash, and obtained from the agent his receipt. He was unable to produce' this receipt, and explains his failure to do so by saying that shortly after it had been received his place of business was raided by prohibition agents, who ransacked his private papers and presumably failed to return the receipt. Plaintiff is, in a measure, corroborated by Miss Emma Hoft and a negress by the name of Teats Recasner. Miss Hoft says she saw Centanni hand the insurance agent some bills in December, 1933, and Teats Recasner testified to the same effect: "I seen Mr. Centanni give him some bills, but I don't know how much." Laurent, the agent of defendant at the time the transaction is alleged to have occurred, who was otherwise employed at the time of the trial, was placed upon the stand by the plaintiff and testified that the premiums were paid to him for a year in advance—not in money, however, but by the delivery of three gallons of alcohol and two pints of whisky. He denied giving the plaintiff a receipt for the premiums, saying: " * * * I couldn't give him a·receipt before I could have gotten rid of my alcohol to put up the money for the business."

R. E. Carroll, the manager of the defendant company, testified that the policy lapsed for nonpayment of premiums on February 12, 1934. Mr. Edward Henley

and L. C. Braun, federal investigators attached to the Revenue Department, stated that they had conducted a raid on the premises of plaintiff and that no receipt for premiums was found among his private papers.

Our appreciation of the evidence is that Laurent, the agent of the defendant insurance company, did not receive the advance payment of a year's premiums in cash and did not issue a receipt, which plaintiff claims to have lost. It is very likely, and we believe true, that Laurent did accept the alcohol and whisky and in consideration therefor did agree to keep the policy in force for a period beyond the date of the death of the insured. There is no proof nor contention that this arrangement had the approval of the defendant company, nor that it knew, acquiesced in, or ratified such arrangement. The question, therefore, is whether an agreement of this kind is binding upon the insurer. The principal is bound by the acts of his agent in the scope of his employment: "The principal is bound to execute the engagements contracted by the attorney, conformably to the power confided to him. For anything further he is not bound, except in so far as he has expressly ratified it." R.C.C. art. 3021.

█ The business of the defendant's agent, Laurent, was, so far as appears from the record, to collect premiums as they became due upon policies issued by his principal. He had no authority to accept in payment of the premiums anything but cash. In accepting the alcohol and whisky from Centanni and agreeing to keep the policy in force he entered into a private agreement with Centanni, whereby he became the agent of Centanni, the insured. This was the view of the Supreme Court of Oklahoma in Turner v. Supreme Lodge K. P., 166 Okl. 286, 27 P.(2d) 612, 93 A.L.R. 647, where an exhaustive discussion of the subject will be found. A note found in 93 A.L.R. at page 654, commenting on the Turner Case reads as follows: "The decided weight of authority supports the rule stated in the reported case, namely, that an agreement between an insurance agent and an insured whereby the former accepts personal property in satisfaction of the premium on the policy does not bind the insurer in the absence of an express authorization to accept such property in lieu of money for the premium, and that no valid contract arises from such payment in the absence of acquiescence, estoppel, ratification by the insurer."

The Supreme Court of the United States, in Hoffman v. Hancock Mutual Life Ins. Co., 92 U.S. 161, 164, 23 L.Ed. 539, considered the effect of the acceptance of a horse by an insurance agent in part payment of a premium on a policy of life insurance and said:

"Within the sphere of the authority conferred, the act of the agent is as binding upon the principal as if it were done by the principal himself. But it is an elementary principle, applicable alike to all kinds of agency, that whatever an agent does can be done only in the way usual in the line of business in which he is acting. There is an implication to this effect arising from the nature of his employment and it is as effectual as if it had been expressed in the most formal terms. It is present whenever his authority is called into activity, and prescribes the manner as well as the limit of its exercise. * * *

"Life insurance is a cash business. Its disbursements are all in money, and its receipts must necessarily be in the same medium. This is the universal usage and rule of all such companies. * * *

"The exercise of such a power [of taking a horse in part payment of a life insurance premium] by the agent was liable to two objections,—it was ultra vires, and it was a fraud as respects the company. Hoffman [the insured] must have known that neither Goodwin [the insurance broker] nor Thayer [the general agent of the insurance company] had any authority to enter into such an arrangement, and he was a party to the fraud. No valid contract as to the company could arise from such a transaction. This objection is fatal to the appellant's case."

We know of no decisions in point in Louisiana, but the authorities we have cited from other jurisdictions are in accord with our views on the subject.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.