ANNIE THOMPSON *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA

(No. 8350)

Submitted April 20, 1937.   Decided April 27, 1937.

*Handlan, Garden & Matthews* and *Lester C. Hess*, for plaintiff in error.

*W. S. Wilkin,* for defendant in error.

Fox, Judge:

This is an action against the Prudential Insurance Company of America to recover money alleged to be due the plaintiff, Annie Thompson, under a certificate of insurance issued by the defendant to John Thompson, which certificate was, in express terms, made subject to a master policy insuring the employees of the Weirton Steel Company. The case was submitted to the trial court, in lieu of a jury, and to a finding and judgment in favor of the plaintiff, the defendant prosecutes this writ of error.

The master policy was issued on the application of the Employees' Relief and Beneficial Association of the Weirton Steel Company, on the 16th day of August, 1926. The Beneficial Association was an organization made up of employees of the Steel Company, in the interest of the welfare of the employees, particularly with relation to life, health and accident insurance; and during the period covered by this litigation, its activities were principally directed by R. E. Campbell, who was its assistant secretary-treasurer. At the date of the master policy, John Thompson was not an employee of the Steel Company, but the policy contained a provision under which persons who subsequently became employees of said company might secure the benefits provided for in such master policy, and under this provision, a certificate of insurance was issued to Thompson when he became an employee of the company in May, 1927. Premiums on such insurance were provided for by deducting from the pay of each employee a specified sum monthly, and the aggregate of these deductions was paid by the Steel Company to the Beneficial Association, which, in turn, paid all premiums due under the master policy to the insurance company. The master policy provided, with respect to the termination of the policy, that

> "Irrespective of any other mode of termination the insurance upon the life of any person insured hereunder shall cease and determine upon termination of the membership of such person in the association or when such person while a member ceases to be actively engaged in

the occupation specified on the first page hereof. Written notification by the Association of such termination of insurance shall be satisfactory evidence that such insurance has terminated and shall release the Company from all claims on account of the insurance so terminated, except as to the adjustment of premiums as provided in the clause headed 'Payment of Premiums;' and as to the right of conversion as herein provided."

The master policy was deposited with the Steel Company, but was open to the inspection of its employees at all times.

The Constitution and by-laws of the Beneficial Association define its purposes as being "to provide financial relief in case of death or total and permanent disability, and to pay weekly benefits for temporary disability"; and they provide that the Association "shall be composed exclusively of the employees of this company" (referring to the Weirton Steel Company) ; and that "membership in this Association will terminate upon severance of a member's connection with the Weirton Steel Co., its successors or assigns."

John Thompson continued in the employ of the Steel Company until July 23, 1930, when he became ill and went to his home. He died October 3, 1932, without having at any time returned to his work. Some three or four months after he became ill, it was determined that, on account of his age and physical condition, he would never be able to return to work. He was removed from the payroll of the Steel Company immediately after he ceased to work, and payment, from that source, of the premiums accruing monthly on his insurance ceased; however, the Beneficial Association paid premiums on said insurance which, it is contended, carried the same to December 15, 1930, but after that date, no premiums were paid to the insurance company on the Thompson policy or certificate, and Thompson was dropped from the membership in the Beneficial Association on or about that date. Under these circumstances, the defendant contends that, under the terms of the policy, the right

of Thompson to protection thereunder ended when he ceased to work for the Steel Company; and, that in any event, such protection did not extend beyond the time when premiums were paid thereon by the Beneficial Association.

The factual situation above outlined is not disputed, but the plaintiff denies that the employment of Thompson by the Steel Company ended when he ceased to work, and says that the same continued to the date of his death; she further contends that the payment of the premiums on his insurance was impliedly waived by reason of certain representations of R. E. Campbell, assistant secretary-treasurer of the Beneficial Association, who, she says, was, for the purposes of this policy, agent of the Prudential Insurance Company.

There is conflict of testimony as to the character of the representations made by Campbell and the time when they were made; giving to these representations, in whatever form and whenever made, the most liberal interpretation in favor of the plaintiff, and giving to the ruling of the trial court the weight to which it is entitled, it may be reasonably contended that both before and after December 15, 1930, Campbell stated to Thompson's physician, who had been delegated by Thompson to inquire about his insurance, that Thompson should not worry; that his insurance was being carried; and that in the event of his death, his policy would be paid.

The defendant replies (1) that Campbell never was its agent; and (2) if such agent, he was not among those who had authority to modify or waive the terms of the policy in question, in any respect whatever, and in support of this contention, refer to the following provision of the master policy:

> "No condition, provision or privilege of this Policy can be waived or modified in any case except by an endorsement hereon signed by the President, one of the Vice Presidents, the Secretary, one of the Assistant Secretaries, the Actuary, the Associate Actuary, or one of the Assistant Actuaries. No modification or change shall be made in this Policy except such as is in

accordance with the laws of the State in which the same is issued. No agent has power in behalf of the Company to make or modify this or any other contract of insurance, to extend the time for paying a premium to waive any forfeiture, or to bind the Company by making any promise, or by making or receiving any representation or information."

It must be apparent that, if we concede every other contention of the plaintiff, she cannot recover, unless the payment of premiums after December 15, 1930, be held to have been waived; and that such waiver, if any there was, must have been made by one having authority to bind the insurance company thereby. If we concede that the representations of Campbell, aside from the question of his authority to make them, amounted to such waiver, then the question narrows to that of his authority to bind the insurance company, and on this point the provision of the policy, last above quoted, must be held to control. It is a provision which the insurance company, for its own protection, had the right to make; and the policy-holder having accepted his certificate, subject to this and other provisions of the master policy, is bound thereby. We are not dealing with the provision of a policy affecting the inception of the obligation created thereby, but with one limiting and defining the power of agents in matters growing out of the interpretation and application of the terms of the policy after its delivery. The distinction between the two is referred to in *Medley* v. *German Alliance Insurance Company*, 55 W. Va. 342, 47 S. E. 101, 2 Ann. Cas. 99, wherein this court held:

"As to promissory warranties, conditions for the violation of which the policy is rendered non-effective after it has become effective and operative, such limitation clause is not only notice to the insured of want of authority in the agent to waive them, but also a stipulation between the parties that the agent has not, and shall not have, any such power."

There would seem to be no distinction between a case where promissory warranty had been made by a policy-holder, and the waiver of any other provision of a policy, affecting the right of the holder, the failure to conform to which might affect the right of recovery. See also *Morgan* v. *American Central Insurance Company,* 80 W. Va. 1, 92 S. E. 84, L. R. A. 1917D, 1049, wherein the limitation of an agent's right to waive the provisions of a fire insurance policy is upheld.

Whatever may have been the relation of Campbell to the insurance company, certain it is that he was not among those who had the power to modify the terms of the policy sued on, by writing endorsed thereon; and he had no power to bind the insurance company by any promise or representation; to extend the time for paying a premium; or to waive a forfeiture. The policy expressly denies to him this power, and the policy-holder must be held to have had notice of this limitation of his power. Where the provisions of a contract are plain and unambiguous, courts are not justified in giving to them a meaning different from that which the language used clearly imports.

The judgment of the circuit court is reversed and the case remanded for a new trial.

*Reversed; remanded.*