## WILLIAMS v. DISTRICT GRAND LODGE NO. 21, GRAND UNITED ORDER OF ODD FELLOWS OF LOUISIANA.

No. 17244.

Court of Appeal of Louisiana. Orleans.

Nov. 27, 1939.

Rehearing Denied Jan. 9, 1940.

See 192 So. 895.

E. B. Charbonnet, Jr., of New Orleans, for appellant.

Moise S. Steeg, Jr., of New Orleans, for appellee.

WESTERFIELD, Judge.

This is a suit by Amanda Williams,. widow of George Singleton, the daughter-beneficiary of James Williams, a deceased member of the Odd Fellows, a fraternal society, against the Grand Lodge of the Order, claiming $400 of a total death benefit of $500. Plaintiff's claim is resisted upon the ground that Williams was not in good standing at the time of his death and, in the alternative, because the Grand Lodge had suspended the subordinate lodge of which Williams was a member and he had failed to comply with Section 8 of Article 1 of the by-laws of the Order which provided that upon suspension of a local lodge, in accordance with Section 4 (requiring that prompt remittance be made to the Grand Lodge by the local lodge of the amount of dues owing to it by the members), all members in good standing must, within thirty days, "apply to the Secretary of the Bureau of Endowment, with his financial card showing his good standing in his Lodge at the time of suspension, for enrollment on the financial list of members recorded in the Bureau of Endowment, subject to be deposited in some other lodge, so that any such member or members may be kept in good financial standing until such time as his or their Lodge may become financial * * *".

There was judgment below in favor of plaintiff as prayed for and defendant has appealed.

The case was tried upon an agreed statement of facts which in effect stipulates that the defendant lodge had issued its death benefit certificate No. 7105 to James E. Williams on December 29th, 1904; that Williams died March 5th, 1932; that all dues and assessments had been paid by Williams from the time of the issuance of the certificate until December 31st, 1928, when an agreement was entered into between the subordinate lodge and Williams, whereby in consideration of its being named beneficiary in the death benefit certificate to the extent of $100, it agreed to waive all dues to the local lodge and to pay all further sums to the Grand Lodge necessary to keep the certificate paid up and Williams in good standing with the order; that the local lodge, in compliance with its agreement, paid all the sums due by Williams to the Grand Lodge between the dates of December 31st, 1928 and June 1931; that on the latter date the local lodge and all of its members, including Williams, were sus-

pended from the Order because of non-payment of monies due by it to the Grand Lodge, and that, thereafter, no dues or assessments of any kind were paid the Grand Lodge by Williams or the local lodge in connection with Williams' death benefit certificate.

It appears from the foregoing stipulation of fact that Williams, after having been a member of the local lodge for about twenty-four years, entered into an agreement with the local lodge providing for the payment of all subsequent dues and assessments by the lodge in consideration of its being named a beneficiary in the death certificate to the extent of $100. Thus, in effect, he obtained a paid-up policy of life insurance, with the Grand Lodge as the insurer, for $400. For nearly two and one-half years the local lodge met its obligation under this agreement and made all payments to the Grand Lodge, and thereafter it became delinquent not only for the money due on account of the Williams policy or death certificate, but for all monies due on account of all of its members, so that when Williams died in 1932, the Grand Lodge declined to pay his beneficiary because of the default of the local lodge in the payment of dues for account of its members.

■ The suspension of the local lodge could not have the effect of voiding the policies of insurance issued to the members of the local lodge who were in good standing at the time of the suspension.

The Court of Appeal for the First Circuit, in Davis v. District Grand Lodge No. 21, 1933, 151 So. 249, 250, said:

"The defense that the suspension of a local subordinate lodge by the parent lodge of an organization such as this defendant is has the effect of annulling certificates or policies of insurance issued to the member of the local lodge has been so frequently rejected of late that we are given to wonder why such organizations persist in urging it before our appellate courts."

In regard to the provision in the by-laws to the effect that upon the suspension of the subordinate lodge by the Grand Lodge all members in good standing must, within thirty days, "apply to the secretary of the Bureau of Endowment, with his financial card" in order to become transferred to some other lodge until his own lodge becomes "financial", that provision is the same as the one considered by us in Johnson v. District Grand Lodge No. 21 (the

same defendant as in the instant case and the same subordinate lodge, Pride of Louisiana Lodge No. 1529) 149 So. 145, 146, where it was held inoperative in the absence of notice to the individual members of their suspension. There we said:

"If a member has knowledge of the suspension of his subordinate lodge, it may be reasonable to require him to take any proper steps to protect himself, but it is not reasonable to require him to do so without notice of such suspension. In Emanuel v. Central Grand Independent Order, etc., supra [16 La.App. 186, 133 So. 506], this question was discussed by the court in the following language: 'It is the duty of defendant to make proper provisions for the members of the local lodge who keep their dues paid up promptly. It would seem that upon a local lodge being suspended on account of the failure of its officers, who are agents of the Grand Lodge, to remit the dues as collected, each individual member whose dues are paid in full should be held in good standing as to his insurance and should be given ample notice as well as opportunity to send his dues direct to the Grand Lodge or to join another local lodge that is in good standing. Anything less than that would be unreasonable and contrary to public policy.

"'So, although the by-laws of the defendant may provide that a beneficiary of a member whose dues are paid up promptly and in full at the time of his death will be deprived of the right to collect under the policy carried by the insured if at the time of the death of the insured the local lodge was suspended because of the failure of the officers to remit the dues collected from its members, this provision is unreasonable and contrary to law.'

"We concur in this view, and we believe that, since it is universally held that the collecting officer of the local lodge is the agent of the Grand Lodge, it would be contrary to public policy to permit the Grand Lodge to take advantage of the defaults of its agent and to punish the members of the local lodge for the defaults of the said agent, unless and until the said local members had been advised of the said default and had been given opportunity to protect themselves."

■ There is no pretension here that any notice was given to the members of the local lodge of its suspension by the Grand Lodge. The question, therefore, is whether the deceased, Williams, was in

144

good standing at the time of the suspension. It will be remembered that the local lodge had agreed to guarantee the insurance for him in consideration of its being named as beneficiary in the death benefit certificate to the extent of $100. Williams, therefore, made no payment after the date of this agreement, December 31, 1928. He had a life membership with a paid-up policy and it is expressly admitted that the payments were made by the local lodge to the Grand Lodge in Williams' name up to the time of its suspension. The suspension was not due to the failure to receive Williams' dues, but because the dues of all the members of the lodge were delinquent. It may be said that subsequent to the suspension of the local lodge, a member without notice of the suspension should, in order to enjoy the benefits of the insurance policy with the Grand Lodge, in good faith continue his payments to the local lodge, but Williams owed no payments to the local lodge because he had been given a life membership and a paid-up policy.

In Wilmer v. Most Worshipful St. John's Grand Lodge, A. F. and A. M. for State of Louisiana, 142 So. 858, this court quoted from Smith v. Most Worshipful St. John's Grand Lodge, etc., 17 La.App. 536, 135 So. 675, as follows:

" 'The money to cover the January dues was in the hands of the proper officer of the local lodge long before same was due, and if it was not forwarded to the Grand Lodge, it was through no fault of the deceased. This court has repeatedly held that when a member of a lodge pays his dues to the proper officer of a local lodge on or before the due date, in accordance with the rules and regulations of the said lodge, he has complied with his duty and is in good standing, regardless of the action of the said officer in not forwarding the money to the Grand Lodge, the officer receiving the money being the agent of the Grand Lodge and not of the member paying it.' "

In Rucker v. Most Worshipful St. John's Grand Lodge, etc., 142 So. 283, 284, the Court of Appeal for the Second Circuit had before it a case which is on all fours with the one presently before us. There Asa Rucker, who had been a member of the Pride of Alexandria Lodge No. 196 A. F. and A. M. Lodge, had been ill for almost a year before his demise. His lodge credited his pass-book with his dues as though they had been paid in cash.

The local lodge in remitting to the Grand Lodge would include the dues of Rucker with the dues of the other members. Rucker died March 22, 1930, and the Secretary of the local lodge for some reason had failed to remit Rucker's dues to the Grand Lodge for the months of April and May, though his pass-book had been credited with payments. The Grand Lodge refused to pay the death benefit of $500 due Rucker's beneficiary upon the ground that he was not in good standing at the time of his death. The Court brushed aside this defense, saying:

"In this case, it is certain that the chief officer of the local lodge, before the deceased died, credited him in his passbook with the dues for the months of April and May. As stated before, whether the deceased paid the dues in cash or whether it was a gift from the lodge is, as we view it, immaterial. The record shows that the dues were paid, and therefore, if the local lodge failed in its obligation to remit those dues to the Grand Lodge, such failure cannot operate as a forfeiture of the certificate or policy of insurance held by the deceased."

See, also, Peterson v. Grand Lodge Knights of Pythias of the State of Louisiana, La.App., 151 So. 224.

In the case at bar, according to the statement of facts, the local lodge had paid to the Grand Lodge all the dues and assessments of Williams up to June, 1931, and in the same month the lodge was suspended by the Grand Lodge for the nonpayment of the dues of all of its members.

Counsel for defendant relies on the case of Centanni v. Southern Life & Health Insurance Company, 165 So. 330, decided by this court. In that case an agent for an industrial life insurance company agreed to keep a certain policy in force in consideration of the payment to him, by the insured, of a certain quantity of alcohol and whiskey. This court held that the insurance agent had no authority to accept commodities or anything else but cash in the payment of premiums and that in doing so he became the agent of the insured and upon his failure to pay the premiums the policy lapsed. That case is not in point. In the first place, the local lodge did not accept any commodities in payment of the dues of Williams, but it made a business agreement with him under which it advanced him the money for the payment of his dues, taking se-

curity in the form of an assignment of his insurance policy for an amount which it deemed adequate to protect itself, and in the next place, the authority of a subordinate lodge in dealing with its members on behalf of the Grand Lodge is much more extensive than a similar agency when discharged by the collector of an insurance company. What the local lodge did in this instance, as well as in the Rucker and other cases, was to provide a means by which a sick and, presumably, unemployed member, might retain his membership during his illness and until his death in the instant case. Viewed simply as a business transaction, it was not unprofitable from the standpoint of the local lodge because, according to the record, the contribution due the Grand Lodge from each member was 75 cents per month, or $9 per year, and Williams lived only two years and three months after the agreement was made, consequently the assignment of $100 to the local lodge more than paid the twenty odd dollars which it had agreed to pay the Grand Lodge. Moreover, whatever may be said of the transaction between Williams and the local lodge, it appears to our satisfaction from the agreed statement of facts that the Grand Lodge was aware of the agreement and it cannot now be permitted, after liability has accrued on the death benefit, to repudiate it to the disadvantage of Williams' beneficiary. The knowledge of the defendant seems evident to us from the following paragraph in the agreed statement of facts: "That between December 31st, 1928 and June, 1931 all monies paid to the defendant order in connection with this certificate held by James W. Williams, therein, were paid by the Pride of Louisiana Lodge No. 1529, with its own monies and not by James W. Williams."

In Jones v. Grand Lodge of Tabernacles of the General Grand Independent Order of Brothers and Sisters of Love and Charity for North and South America, Liberia and Adjacent Islands, No. 8129, 18 La.App. 62, 137 So. 629, the Court of Appeal for the Second Circuit held that a member who had paid his dues to the local lodge was in good standing regardless of whether the dues had been forwarded to the Grand Lodge or not.

The grandiloquent title of the defendant in the Jones case is not quite typical of all defendants in these lodge cases, for the words "Most Worshipful" are quite popular, but it is fairly so, and it is, we believe, representative of the objects and purposes of all of them, "Brothers and Sisters of Love and Charity". The fraternal, next to the paternal or filial, is the strongest of human ties, love, the greatest of human emotion, and charity, the greatest of all human attributes. St. Paul says:

"Though I speak with the tongues of men and of angels, and have not charity, I am become as sounding brass, or a tinkling cymbal."

Could the ideals of any organization be more exalted. They have indeed hitched their wagons to the stars of humanity. How, then, can it be said, that where local lodges, as a gratuity or for a consideration, relieve sick and disabled members from the burdensome payment of dues and assessments which they are financially unable to discharge and physically unable to earn, are acting beyond the scope of their agency and not in furtherance of the charitable and benevolent purposes of the order. To hold under such circumstances that the local order becomes the agent of the individual members would be most unreasonable and, we might add, uncharitable. An insurance collector, as in the Centanni case, may not accept whiskey in payment of premiums without becoming the agent of the insured for the payment of the premiums to his principal, the insurance company, but an insurance company is not a fraternity and certainly not an organization of "Brothers and Sisters of Love and Charity".

Many cases have arisen in which fraternal societies, by the adoption of by-laws and other regulations, have attempted to make the collecting officer of the local lodge the agent of the member in the payment of his dues to the Grand Lodge. Typical of a number of such provisions is that found in the by-laws of the Knights of Pythias and considered by the Supreme Court of the United States in Knights of Pythias v. Withers, 177 U.S. 260, 20 S.Ct. 611, 613, 44 L.Ed. 762. The clause under consideration there reads:

"Sections of Endowment Ranks [comparable to local lodges] shall be responsible and liable to the board of control [comparable to Grand Lodge] for all moneys collected by the secretary or other officers from the members for monthly payments, assessments, or dues not paid over to the board within the time and manner prescribed by law. Officers of

sections are the agents of members, and shall in no wise be considered as the agents of the representatives of the board of control or of the Endowment Rank or of the Supreme Lodge."

This clause was held ineffective, the court saying with reference to it:

"In other words, by the failure of the secretary, over whom he had no control, to remit within thirty days, every member of the section might lose his rights under his certificate and stand in the position of one making a new application, with a forfeiture of all premiums previously paid."

and at another point in the opinion:

"It is as if a creditor should instruct his debtor to pay his claim to a third person, and at the same time declare that such third person was not his agent to receive the money. It would scarcely be contended, however, that such payment would not be a good discharge of the debt, though the third person never accounted to the creditor; * * *".

Whiteside v. Supreme Conclave, C.C., 82 Fed. 275 and Knights of Pythias v. Bridges, 15 Tex.Civ.App. 196, 39 S.W. (Tex.) 333, are cited by the Court in the Withers case as holding "the officers of the subordinate lodge, or conclave, were treated as the agents of the Supreme Conclave in the matter of granting extensions of time for the payment of assessments."

█ Plaintiff has asked for 10 per cent damages for frivolous appeal. We do not believe this is a case in which the damages asked for should be awarded.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (concurring).

I thoroughly agree that it would produce a great hardship to deprive the beneficiary of James Williams of the death benefit for which he, during the twenty-five years of his life, had made regular payments, and, since my associates, among the reasons given for the result reached, have found one to which I can subscribe, I have concurred in the decree rendered. But I cannot refrain from protesting against certain other statements made in the majority opinion since I feel that they do violence to well-established legal principles and since I sense the danger that, in the future, those statements may be relied upon as authority.

Let us first understand the fundamental facts.

Williams was a member of the local lodge. To it he paid his dues. The grand lodge issued the death benefit certificate and, in payment for that certificate, the local lodge, each month, remitted a certain portion of Williams' dues. The two lodges are separate legal entities. For about twenty-five years Williams paid his dues regularly to the local lodge, which, with the same regularity, paid to the grand lodge the portion required as payment for the benefit certificate. Then Williams found that he could not make payments, but the local lodge, probably feeling that he would not live for any great length of time, contracted with him that, if he would agree that on his death it would receive $100 out of his death benefit, it would pay all dues and assessments which, during the remainder of his life, he would otherwise have had to pay. It did not make these payments and, accordingly, when Williams died, the grand lodge refused to pay the amount called for by the death benefit certificate, taking the position that Williams was delinquent in his payments.

It is well established that, for the collecting of the "premiums", the local lodge was the agent of the grand lodge. Consequently, so long as Williams paid to the local lodge, in the manner contemplated, the amounts due to the grand lodge, it mattered not whether the local lodge remitted these amounts or not. But when Williams made with the local lodge any agreement for the payment of those dues in any manner other than that contemplated, he made the local lodge his agent, and then any failure on its part to carry out the agreement constituted a failure of his agent and not a failure of the agent of the grand lodge. This principle is so simple and so clear that I shall not even cite authorities except to say that I cannot find it possible to distinguish Centanni v. Southern Life & Health Insurance Company, 165 So. 330, decided by this court on January 27, 1936. There, as stated in the majority opinion in the case at bar, "an agent for an industrial life insurance company agreed to keep a certain policy in force in consideration of the payment to him, by the insured, of a certain quantity of alcohol and whiskey. This court held that the insurance agent had no authority to accept commodities or anything else but cash in the payment of premiums and that in doing so he became

the agent of the insured and upon his failure to pay the premiums the policy lapsed." My associates say:

"That case is not in point. In the first place, the local lodge did not accept any commodities in payment of the dues of Williams, but it made a business agreement with him under which it advanced him the money for the payment of his dues, taking security in the form of an assignment of his insurance policy for an amount which it deemed adequate to protect itself, * * *".

What possible distinction can lie in the fact that, in the one case, an agent agreed to accept "commodities" instead of cash, whereas here the agent agreed to accept an interest in the policy instead of cash.

Nor can there be found, in Knights of Pythias v. Withers, 177 U.S. 260, 20 S.Ct. 611, 614, 44 L.Ed. 762, any authority for the suggestion that, in fact, there is no real distinction between a local lodge and a grand lodge. That case does not in any sense hold that a local lodge is the same as the grand lodge, but, in fact, seems to recognize that the one is a separate entity from the other. All that is there decided is that a grand lodge cannot designate a local lodge as its agent for the collection of dues and at the same time stipulate that payment to that agent shall not constitute payment to the principal unless the remittance is actually made to the principal. Note the following language:

"It is as if a creditor should instruct his debtor to pay his claim to a third person, and at the same time declare that such third person was not his agent to receive the money. It would scarcely be contended, however, that such payment would not be a good discharge of the debt, though the third person never accounted to the creditor; * * *".

Note, also—and particularly—the word "money". Surely the same result would not have been reached had the member, instead of paying money, paid in commodities, or by transferring an interest in a benefit certificate.

In the majority opinion the statement is made that Rucker v. Most Worshipful St. John's Grand Lodge, etc., La.App., 142 So. 283, is "a case which is on all fours with the one presently before us", and I concede that, at first reading, that case does seem to be identical. But a careful reading of that opinion shows clearly that the local lodge had established a sick benefit fund out of which the dues of sick members were paid and that that lodge receipted the book of the particular member and thereby assigned, from the cash fund which it then had on hand, the necessary amount for the payment of the dues of the member. Thus, in truth and in fact, the lodge actually had on hand cash which it should have taken from its sick benefit fund and which it should have remitted to the grand lodge. In other words, the agent, the local lodge, actually had cash for the payment of the member's dues. It merely failed to remit this cash.

It is true that in that case the court went further and said that it did not matter whether it had cash or not, so long as it receipted the member's book, but I cannot agree with that statement.

I have made the foregoing remarks merely to have it clearly appear that I do not concur in the view that an "agent" may be paid what is due his principal in any manner other than that stipulated for —here in cash. I do agree, however, that if the grand lodge had knowledge that this arrangement had been made, it was then its duty to notify Williams that the local lodge had been suspended, and that the amounts due by it for his account were not being remitted. Since my associates conclude from the record that the grand lodge had knowledge of this fact, I concur in the conclusion that, by not notifying the member (Williams), the grand lodge in effect made itself a party to the agreement with the local lodge and cannot be heard to say that the dues of Williams were not paid. Had the decree been based on this fact, I would have agreed fully and would not have found it necessary to set forth these reasons.

I concur in the decree.