LELA HICKS, *Administratrix, etc., v.* METROPOLITAN LIFE INSURANCE COMPANY

(No. 8937)

Submitted January 10, 1940. Decided January 23, 1940.

*Brown, Jackson & Knight,* for plaintiff in error.

Fox, Judge:

On the 28th day of January, 1939, Lela Hicks, as administratrix of the estate of her deceased husband, Lucious Hicks, recovered a judgment against the Metropolitan Life Insurance Company for the sum of $348.00, based upon an insurance policy issued to Lucious Hicks by the defendant company, on October 26, 1936. The judgment was entered upon the verdict of a jury, after a motion to set aside the verdict had been overruled, to which action of the court the insurance company prosecutes this writ of error.

The insurance policy sued upon is known as an industrial endowment policy, upon which a weekly premium of thirty cents was required to be paid, and such premiums were collected by an agent of the insurance company working in the territory in which the insured resided. The record shows that the premiums on this policy were paid to January 17, 1938, and that no premiums were in fact paid thereafter. Under its terms, the policy would lapse for failure to pay premiums, but a period of grace of four weeks was provided for, during which the policy continued in force, and in case of death during that period, any overdue premiums were deductible from the amount payable under the policy.

The policy contained a provision that the same constituted the entire agreement between the parties, and among the provisions was one that the agents of the company were not authorized to alter or discharge contracts, to waive forfeitures, or to receive or receipt for premiums on policies more than four weeks in arrears. The right of the insurance company to make such a provision was upheld, in principle, by this Court in the case of *Thompson* v. *Prudential Insurance Company,* 118 W. Va. 573, 191 S. E. 205. Nothing shown in the record, unless it be the alleged agreement hereinafter considered, in anywise avoids the effect of failure to pay premiums. The insured, Lucious Hicks, died on the 14th of March, 1938, more than four weeks beyond the date to which premiums on his policy had been paid.

8

Notwithstanding these facts, the plaintiff seeks to recover on the ground of an alleged agreement with one Ira Cooper, an agent of the defendant, by which it is claimed he agreed to keep up the premiums on the policy. The testimony of the plaintiff, Lela Hicks, is that on the morning of January 14, 1938, Ira Cooper came to her home for the purpose of collecting insurance premiums due on the policy held by her husband, as well as on a policy she held, and, apparently, there was a total of $4.40 due on both policies, which was then paid, and which carried the insurance to January 17th, following. She testified that the question of payment of premiums was discussed, and Cooper was told that as soon as a "security" check was received the premiums would be paid, and that he then said:

> " 'Where is that gun, Lucious? * * * Well, I have taken care of your gun before, I will take this gun, Lucious you let me have it in order to hold you up in your insurance, I will take this gun and keep it for you and straighten up your insurance, and when you get your security check then you pay me for this gun. * * * I have taken care of your gun before, don't be uneasy about your gun or about your premiums, if I don't get here to sign up your book I will take care of you on my book.' "

Later in her testimony, and upon cross-examination, the plaintiff says that what Mr. Cooper told her husband was:

> " 'I will take your gun and I will hold it for you and keep up the premiums for you until you get your security check and you come to me and if I don't go busted by the time you find me I will take care of you.' "

Cooper says that on January 14, 1938, he agreed to pay and did pay the premiums then due on the two policies, amounting to $4.40; that he took the gun as security for premiums then advanced and told Hicks and his wife that they would have to take care of the premiums later to become due; and that on more than one occasion, he went

to the home of Lucious Hicks and attempted to collect premiums, and in this statement he is supported by the witness Jones. The case, however, is not submitted to us on any question of fact, but upon the legal question of whether or not, if plaintiff's contention as to the undertaking of Cooper be admitted, the insurance company was bound thereby.

Whatever the agreement entered into between Lucious Hicks, the insured, and Ira Cooper, it was a personal transaction; and the insured, in putting up his personal property with the understanding, as the plaintiff contends, that premiums were to be paid, constituted Cooper his agent for that purpose. If, under these circumstances, Cooper had complied with such agreement and actually paid the premiums, insured would have been protected, but where it appears, as in this case, that the premiums were not paid, the policy lapsed, and the period of grace having expired, there was no right of recovery thereon at the date of the death of the insured. A number of well-considered cases sustain this view. *Hoffman* v. *John Hancock Mutual Life Ins. Co.,* 92 U. S. 161, 23 L. Ed. 539; *Sovereign Camp* v. *Blanks,* 208 Ala. 449, 94 So. 554; *Cohen* v. *New Zealand Ins. Co.,* 100 N. J. L. 110, 126 Atl. 417; *Turlington* v. *Metropolitan Life Ins. Co.,* 193 N. C. 481, 137 S. E. 422; *Gibson* v. *Texas Prudential Ins. Co.,* 229 Mo. App. 867, 86 S. W. (2d) 400; *Centanni* v. *Southern Life and Health Ins. Co.* (La.), 165 So. 330; *Turner* v. *Supreme Lodge,* 166 Okla. 286, 27 Pac. (2d) 612, 93 A. L. R. 647. To the last cited case a valuable note is attached, in which it is stated that

> "The decided weight of authority supports the rule * * * that an agreement between an insurance agent and an insured whereby the former accepts personal property in satisfaction of the premium on the policy does not bind the insurer in the absence of an express authorization to accept such property in lieu of money for the premium, and that no valid contract arises from such payment in the absence of acquiescence, estoppel or ratification by the insurer."

The judgment of the Circuit Court of Mingo County is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*